CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED
March 10, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ Kendra Campbell
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| KAREN L. ROLEN, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:24-cv-33 |
| VIRGINIA CVS PHARMACY, LLC, et al., | ) By: Hon. Robert S. Ballou |
| Defendants. | ) United States District Judge |

**MEMORANDUM OPINION**

The Federal Arbitration Act reflects a liberal federal policy in favor of enforcing valid and enforceable arbitration agreements. However, "[e]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002). Where, as here, the party opposing arbitration raises an issue as to whether the arbitration agreement is valid and enforceable, the court must allow fact-finding as to the enforceability of the arbitration agreement. Thus, Defendants' request to conduct limited discovery as to the enforceability of the arbitration agreement is **GRANTED** and Defendants' Motion to Compel Arbitration is **DENIED without prejudice** (Dkt. 12). The parties shall have 75 days to conduct limited discovery into whether CVS and Rolen formed a valid and enforceable agreement to arbitrate.

I. **Factual Background**[1]

Rolen filed suit against her employer, Virginia CVS Pharmacy, LLC, and her supervisor, Charles Jessee Nunley, alleging various employment claims including age and gender

---

[1] In considering a motion to compel arbitration, the court employs a standard similar to summary judgment and is "entitled to consider materials other than the complaint and its supporting documents." *Berkeley County School District v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019).

discrimination and retaliation, and violations of the Equal Pay Act. Am. Compl., Dkt. 4. Defendants move to compel arbitration and stay these proceedings under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., asserting that the arbitration agreement in Rolen's employment contract compel mandatory and binding arbitration of her claims. Dkt. 12. Rolen, proceeding *pro se*, opposes the motion, arguing that she opted out of the arbitration agreement.

Defendants contend that Rolen voluntarily entered into an agreement to arbitrate all workplace legal issues in October 2014, which requires her to arbitrate all claims "arising out of or related to" her employment. Dkt. 13-1, p. 9. Defendants provide the Declaration of Robert Bailey, the Executive Director, Enterprise Learning, Development and Performance of CVS Pharmacy, Inc. in support of their motion to compel. Dkt. 13-1. Mr. Bailey states that in October 2014, CVS introduced an Arbitration of Workplace Legal Disputes policy, which includes a mutual obligation to arbitrate provision. The CVS arbitration policy covers "any and all legal claims, disputes or controversies….arising out of or related to the Employee's employment with CVS Health.." Dkt. 13-1 at ¶ 7. Shortly thereafter, CVS invited its employees to participate in an arbitration training course which communicated and educated employees on the arbitration policy. *Id.* at ¶ 8. Each CVS employee had unique log-in credentials and a personalized password to access CVS training courses, including the arbitration training course. *Id.* at ¶ 5. Employees taking the arbitration training course could not continue past the third slide without clicking a link to display an arbitration policy guide that advised employees on their rights regarding arbitration of employment disputes and how to accept or opt out of the arbitration policy. *Id.* at ¶ 10. Specifically, the Arbitration Policy Guide CVS employees reviewed as part of the Arbitration Training Course provides:

> Colleagues accept the policy by continuing their employment with CVS Health after becoming aware of the policy. With that being said, we want colleagues'

> participation to be voluntary. Colleagues will be asked to acknowledge and agree to the policy, but from the time that a colleague first views or receives the policy, he or she has thirty days to opt out of the policy. If a colleague opts out, he or she will not be obligated to go to arbitration and can continue to use the traditional court system as before. Likewise, if a colleague opts out, CVS Health will not be required to arbitrate any disputes it has with that colleague.
>
> **How to Opt Out**
>
> In order to opt out, a colleague must mail a written, signed and dated letter stating clearly that he or she wishes to opt out of the CVS Health Arbitration of Workplace Legal Disputes Policy. The letter must be mailed to CVS Health, P.O. Box 969, Woonsocket, RI 02895. In order to be effective, the colleague's opt out notice must be postmarked no later than 30 days after the date the colleague first views or receives the policy. Please note, sending in a timely notice is the **only** way to opt out. A colleague cannot opt out by refusing to complete training or attend meetings about the policy. CVS Health will not tolerate retaliation against any colleague who decides to opt out.

*Id.* The provision includes the statement, "Employees accept this Policy by continuing their employment after becoming aware of the Policy." *Id.*

The CVS employee must review the Arbitration Policy Guide before returning to the Arbitration Training Course slides to complete the training. *Id.* at ¶ 10. The fifth slide of the Arbitration Training Course instructs the user to click the "Yes" button at the bottom of the slide to confirm acknowledgement of agreement to statements including that they carefully read the arbitration policy, that they have an opportunity for a limited time to opt out of the policy, the required steps to opt out, and that clicking the "Yes" button creates a legally binding electronic signature. *Id.* at ¶ 13.

CVS records reflect that Rolen completed her training on the arbitration policy on October 28, 2014. *Id.* at ¶ 16. CVS provided Rolen's training transcript to the court, reflecting all of the trainings that Rolen completed throughout her employment with CVS, including the arbitration policy training. Dkt. 13-1. pp. 49, 66. CVS avers that it did not receive any writing indicating that Rolen wished to opt out of the arbitration policy on or before the thirtieth day

after she viewed the arbitration policy, or at any time prior to the filing of this lawsuit.[2] Dkt. 13-1, at ¶ 17.

Rolen provides sworn testimony in opposition to the motion to compel, asserting that she has no recollection of completing the arbitration training module. Rolen denies completing the arbitration training, and insinuates that it may have been completed on her behalf by an "interested person," or another employee or manager who used her information to log in.

Rolen also testifies that the arbitration agreement was offered "via a web-based training which offered no electronic option to opt-out," and that the training "created quite a concern and was verbally spoken of among Pharmacist, Managers, and other employees…" Dkt. 20, p. 3. Rolen states that when CVS announced the arbitration policy she received advice from legal counsel not to accept the policy and to opt-out. Rolen asserts that "under the advice of counsel and within the 30 days of being notified that such policy existed by other employees [Rolen] mailed out two separate opt-out letters to the address they provided and to the corporate office." Dkt. 20, p. 4. Rolen specifies that she mailed two opt-out letters, one to the address "their opt out paragraph stated," and the second to CVS's corporate address as One CVS Drive, Woonsocket, RI., 02895. Rolen provides a letter from the attorney she sought advice from regarding the arbitration agreement, dated November 20, 2024, in which the attorney states that she represented Rolen in a claim against CVS in 2008; and that while she does not have an independent memory of a conversation with Rolen in October 2014 concerning an "opt out of Arbitration provision, it is most likely that [she] would have advised her to do so." Dkt. 25-1.

---

[2] CVS provided the declaration of Lorne Dunkerton, a paralegal in the Legal Department, stating that all opt-out notices sent in by CVS employees that are matched to an employee name and/or identification number have been scanned into the CVS computer system and are maintained and tracked. Dkt. 24-1. Additionally, CVS maintains a file of all opt-out letters received that cannot be matched to an employee name or identification number. Dunkerton states that neither set of letters include an opt-out letter from Rolen. *Id.*

## II.     Standard of Review

The Federal Arbitration Act provides that written agreements to arbitrate disputes shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21, (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). "[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [should be] resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

Arbitrability is a question of contract interpretation; a party cannot be required to arbitrate a dispute if they have not contractually agreed to do so. Thus, in the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate and foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.

*Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). Rolen contests the second element—the existence of a binding contract to arbitrate this dispute.

The party seeking to compel arbitration bears the burden of establishing the existence of an arbitration provision that covers the parties' dispute. *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 456 (4th Cir. 2017). If a party makes this evidentiary showing, the party opposing arbitration must come forward with sufficient facts to place the entitlement to arbitration in dispute. *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015). Issues regarding the formation of an

agreement to arbitrate are governed by state law contract principles. *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 218 (4th Cir. 2024).

Where there is a dispute of fact regarding the formation of an agreement to arbitrate, "a district court may resolve the relevant factual disputes by, as necessary, affording targeted discovery, conducting an evidentiary hearing, conducting a summary trial, making findings of fact and conclusions of law, all as necessary and appropriate to resolve the motion." *Naimoli v. Pro-Football, Inc.*, 120 F. 4th 380, 390 (4th Cir. 2024) (citing *Tehran-Berkeley Civ. & Env't Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 816 F.2d 864, 868–69 (2d Cir. 1987)). The Federal Arbitration Act "calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses." *Id.*, quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 29 (1983).

### III. Analysis

#### A. Who Determines Enforceability?

CVS argues that the determination of whether Rolen opted out of the arbitration agreement is for the arbitrator to decide. CVS relies upon the delegation clause in the arbitration policy stating that the arbitrator, not the court, resolves gateway issues such as the enforceability of the arbitration agreement. The arbitration policy states, "Covered Claims also include disputes arising out of or relating to the validity, enforceability, or breach of this Policy." Dkt. 13-1, p. 11.

However, the court decides "certain gateway matters, such as whether the parties have a valid arbitration agreement at all ...." before compelling arbitration. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). "There is a difference between disputes over arbitrability and disputes over contract formation. While 'parties may agree to have an arbitrator decide ... gateway questions of arbitrability,' such an agreement does not 'preclude a court from deciding

that a party never made an agreement to arbitrate *any* issue.'" *Rowland v. Sandy Morris Fin. & Estate Planning Servs, LLC,* 993 F.3d 253, 258 (4th Cir. 2021) (quoting *Berkeley County School District v. Hub Int'l*, 944 F.3d 225, 234 n.9 (4th Cir. 2019)) (internal citations omitted).

Indeed, "[i]f a party challenges the validity...of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement ...." *Rent-A-Ctr., W. v. Jackson*, 561 U.S. 63, 71 (2010); *see Cullen v. Hall Automotive, LLC*, No. 2:21cv47, 2022 WL 1561227, at * 3 (E.D. Va. Jan. 7, 2022) ("[T]his court's contract interpretation function encompasses the initial inquiry into whether the parties agreed to arbitrate the particular arbitrability questions raised.")

As the Fourth Circuit stated in *Rowland*,

> This pre-arbitration process accomplishes an important function. It must be remembered that mandatory arbitration is not the default form of dispute resolution but rather is permitted only when the parties agree to it. "Arbitration is," after all, "a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). A party cannot be forced into arbitration. Rather, parties must actually contract to arbitrate disputes between them. Section 4 of the FAA has made clear that it is up to courts to determine whether a contract has been formed, and the district court properly heeded that call. This respects party autonomy and the general principles of contract law.

993 F.3d at 258. Accordingly, this court must resolve the issue of whether the parties entered into a valid and enforceable agreement to arbitrate.

### B. Did the Parties Enter into a Valid and Enforceable Arbitration Agreement?

The parties do not dispute three of the four *Whiteside* factors: that there is a dispute, that the transaction relates to interstate commerce, and that Rolen has failed to arbitrate that dispute. Rolen contests the second *Whiteside* factor, the existence of a valid agreement to arbitrate.

7

Whether a valid agreement to arbitrate was formed is a question of applicable state contract law. *Adkins*, 303 F.3d at 501.

As the party seeking to compel arbitration, CVS bears the burden of establishing the existence of a binding contract to arbitrate the dispute. *Minnieland Private Day Sch., Inc.,* 867 F.3d at 456. Here, CVS produced evidence of an arbitration policy that covers the parties' dispute. CVS provided evidence reflecting that Rolen accepted the terms of the arbitration provision by completing the arbitration training. Rolen's claims arise from her employment; thus, the plain language of the agreement covers the parties' dispute. I find that CVS met its initial burden to establish the existence of a binding contract to arbitrate Rolen's employment dispute.

As the party resisting arbitration, Rolen must establish "'genuine issues of material fact regarding the existence of an agreement to arbitrate,' which requires not only 'an unequivocal denial that an arbitration agreement exists,' but also 'sufficient facts in support' of that denial." *Alston v. Barclays Bank Delaware*, No. TDC-18-2829, 2019 WL 13487572, at *1 (D. Md. Apr. 16, 2019) (quoting *Chorley Enterprises, Inc.*, 807 F.3d at 564). In evaluating Rolen's arguments, facts and inferences will be viewed in the light most favorable to her. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Rolen advances two arguments to invalidate the arbitration agreement. First, she disputes that she completed the arbitration training, arguing that the online training could have been filled out by a manager who obtained her username and password. Rolen provides no evidence to support this theory aside from her own declaration, in which she casts doubt on whether she completed the training, but does not unequivocally deny it. *See* Dkt. 20. Rolen's unsubstantiated assertions that she did not complete the training are contradicted by her training records provided

8

by CVS, and her sworn statements that she was aware of the arbitration training and agreement; that she sought the advice of counsel regarding CVS's arbitration policy; and that she took the affirmative step of mailing two letters to CVS requesting to opt-out of the arbitration agreement, one to the address noted in the policy opt-out provision, and one to CVS headquarters. *See* Dkts. 20, 21, 25. Even assuming Rolen's assertion that she did not complete the arbitration training is true, the arbitration policy states that an employee cannot opt out by refusing to complete training or attend meetings about the policy. Thus, Rolen's argument that she did not complete the arbitration training fails to create a genuine issue of material fact. *See Crews v. Maxim Healthcare Servs. Inc.*, No. 21cv1019, 2021 WL 2417732, at *3 (W.D. Tenn. June 14, 2021) (Plaintiff's declaration that he did not sign online arbitration agreement is insufficient to contradict abundant evidence attributing digital signature on document to Plaintiff); *Cullen v. Hall Automotive, LLC*, No. 2:21cv47, 2022 WL 1561227, at *6 (E.D. Va. Jan. 7, 2022) (Plaintiff's failure to remember signing an arbitration agreement did not create a genuine issue of material fact sufficient to defeat arbitration).

Rolen also provides sworn testimony that she opted out of the arbitration agreement by mailing two opt-out letters within 30 days after receiving notice of the arbitration policy, one to the address provided by the arbitration policy and one to a different CVS address.

Rolen states that she consulted with attorney Louise R. Zito, J.D., in October 2014, and was advised by Ms. Zito to opt out of the CVS arbitration provision. Rolen provides a letter from Ms. Zito confirming that she represented Rolen in a matter against CVS in 2008; that she does not specifically remember Rolen discussing an arbitration opt out provision with her in October 2014; she "most likely" would have advised her to opt out. Dkt. 25-1. Rolen affirmatively states that she mailed the opt out letter as directed, to the proper address, and within the time required.

CVS argues that Rolen's allegations are insufficient to raise an issue of disputed fact because she did not testify that her letter was stamped, and she provided no postmark or other evidence to support her claim of mailing the letter. CVS presents a sworn declaration that it did not receive Rolen's opt out notice. However, the arbitration agreement does not state that the opt out notice must be *received* to be effective. It requires only that the opt out letter must be mailed within a certain date. *See Garren v. CVS Health Corp.*, No. 3:17-cv-149, 2018 WL 3377327, at *6 (E.D. Tenn. July 11, 2018) ("[t]o be sure, Defendants would not have any way of knowing about an opt out if it did not reach them. But that is not how they crafted their offer."); *Deverze v. Uber Tech., Inc.*, No. 1:19cv4988, 2020 WL 10111001, at *7 (N.D. Ga. May 7, 2020) ("[T]here is no provision in the arbitration agreement in this case that states that the opt-out notice must be received if submitted via mail, nor is there any provision that the sender must maintain a time or date-stamped record of the transmission."). As in *Garren* and *Deverez*, CVS's arbitration policy guide allows for the opt-out notice to be submitted via regular United States mail and requires only that it be postmarked no later than 30 days after the date Rolen first viewed or received the policy. The arbitration policy guide does not require that the opt out letter be date-stamped, that the employee provide proof of mailing, or that the letter be received by CVS.

Rolen's sworn statements raise an issue of fact as to whether she mailed an opt out letter in accordance with the policy requirements. "[I]f a party challenges the enforceability of an arbitration agreement, courts generally permit discovery regarding the formation and performance of the arbitration provision." *Dillon v. BMO Harris Bank, N.A.*, No.1:13cv897, 2015 WL 6619972, at *3 (M.D.N.C. Oct. 30, 2015) (citing cases). Such discovery must remain "tailored to matters pertinent to the disposition of the petition to compel arbitration and/or stay

10

litigation," namely "issues relating to the making and performance of the agreement to arbitrate." *Id.,* at *3.

Accordingly, I find it appropriate to grant Defendants' request to conduct limited discovery regarding whether the parties formed a valid and enforceable agreement to arbitrate. *See Scales v. SSC Winston–Salem Operating, Co., LLC*, No. 1:17cv539, 2017 WL 4467278, at *6 (M.D.N.C. Oct. 5, 2017) (finding Defendant's request to compel arbitration premature and ordering discovery regarding the formation and execution of the arbitration agreement); *see also Blankenship v. Seventeenth St. Assocs., LLC*, No. 3:11-0627, 2012 WL 10008266, at *1 (S.D.W. Va. Feb. 1, 2012) (denying without prejudice a motion to compel arbitration and granting discovery on the formation and execution of the alleged arbitration agreement).

It is **ORDERED** that Defendants' Motion to Enforce Arbitration (Dkt. 12) is **GRANTED** as to the request to conduct discovery and **DENIED without prejudice** as to the request to compel arbitration and stay proceedings. The parties shall have **75 days** from the date of this opinion to conduct discovery on the limited question of whether Rolen opted out of the arbitration policy. The scope of discovery shall be limited, as follows:

1. Each party may propound a maximum of five interrogatories, five requests for production of documents, and five requests for admission. All responses are due within the timelines provided by the Federal Rules of Civil Procedure.

2.  Each party may take a maximum of two depositions within the designated discovery period.

3. All discovery shall be limited solely to whether Rolen opted out of the arbitration agreement.

4. After termination of the limited discovery period, Defendants may file a renewed motion to compel arbitration, if they deem it appropriate to do so.

An appropriate Order accompanies this Memorandum Opinion.

Entered: March 10, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge